UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE HOST AMERICA CORP. SECURITIES LITIGATION | MASTER FILE NO. 05-CV-1250 (VLB) |
| This document relates to: ALL ACTIONS | OCTOBER 18, 2007 |

### Memorandum of Decision Accompanying Order for Notice and Hearing In Connection with Settlement Proceedings [Dkt. No.205]

Currently before the court is a proposed partial[1] class action settlement [Dkt. No. 203] (dated 10/12/07) which is subject to the court's approval under Rule 23 of the Federal Rules of Civil Procedure. The parties have requested that the court certify the proposed class for settlement purposes only [Dkt. No. 203, Exh. A]. For the reasons stated below, and by its order of even date herewith, the proposed class is conditionally certified for settlement purposes only and the court approves the provision of notice to the members of said class. The certification of the class is conditional because, although all of the requirements of Rule 23(a) and (b)(3) have been satisfied, the facts used by the court in making these determinations may evolve once the court has the settlement fairness hearing.

---

[1] The settling defendants include Host America and Geoffrey Ramsey (chairman of Board, CEO and President of Host America), David Murphy (CFO, acting CEO and President) and Peter Sarmanian (Director). The class action has not settled as to defendant Roger Lockhart, a "10% owner" of Host America.

1

**Conditional Class Certification for settlement purposes only**

Rule 23 of the Federal Rules of Civil Procedure delineates, *inter alia*, the prerequisites to maintaining a class action and the requirements for class certification. Although the rule is silent as to certifying a class "for settlement purposes only," the Second Circuit Court of Appeals and the United States Supreme Court have recognized this judicial invention. See *Amchem Prods. v. Windsor*, 521 U.S. 591, 619-22, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (U.S. 1997) and *Denney v. Deutsche Bank AG*, 443 F.3d 253, 262 (2d Cir. 2006).

Requests for certification in the settlement context, however, must be carefully scrutinized by the court because of their inherent dangers. Namely, these certifications are submitted to the court in a non-adversarial context by parties who have already agreed to settlement, but nonetheless have a binding effect on "class members"– individuals who are not parties to, indeed, may not even be aware of, the pending litigation. See *Amchem Prods. v. Windsor*, 521 U.S. 591. The Supreme Court recognized these dangers and instructed district courts to use caution when certifying classes for settlement purposes. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the rule--those designed to protect absentees by blocking unwarranted or overbroad class definitions-- demand *undiluted, even heightened, attention* in the settlement context. Such

attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. See Fed. Rule Civ. Proc. 23(c), (d)." (Emphasis added.) *Amchem Prods. v. Windsor* at 620.

"The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing the suit as a class action and allows the court to postpone formal certification of the class until after settlement negotiations have ended." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 83 (S.D.N.Y. 2007). The parties must demonstrate that Rule 23(a) and at least one of the requirements of 23(b) is satisfied before certifying a class. "The important point is that the requirements of Rule 23 must be met, not just supported by some evidence. . . . [A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." (Internal quotation marks omitted.) *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 33 (2d Cir. 2006).

Rule 23 (a) provides that: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23 (b) (3), which is applicable to this case, provides that the court must find:

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

This is a consolidation of 14 cases which were assigned to District Judge Arterton. The factual basis of the actions was articulated in Judge Arterton's April 10, 2006 order appointing lead plaintiff and counsel [Dkt. 81]:

> All complaints filed against defendants in this consolidated action contain similar claims, alleging that defendants violated Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, by issuing a series of material misrepresentations. These include statements in a July 12, 2005 press release and a Form 8-K filed with the SEC announcing a deal with Wal-Mart for Wal-Mart to utilize Host America's LightMasterPlus technology, thereby artificially inflating the price of Host America stock, buyers of which suffered losses when the misrepresentations were revealed, an SEC investigation was commenced, and trading of Host America securities was halted on July 22, 2005. The complaints allege that statements made in July 2005 regarding a purported agreement with Wal-Mart for the installation of its LightMasterPlus technology in ten Wal-Mart stores, characterizing this as the "first-phase roll out," stating "the next phase will involve a significant number of stores," and noting "[t]his is a major event for our company," were materially false and misleading because the defendants knew, but failed to disclose: (1) that Host America's relationship with Wal-Mart was limited to a test installation; (2) that Host America had no agreement for any subsequent installations in other Wal-Mart stores; and (3) that as a result of the foregoing, defendants' statements were lacking in a reasonable basis at all relevant times.

**The parties have proposed a class of "all persons who purchased Host America Securities during [July 12, 2005 through July 22, 2005] and were damaged thereby." Stipulation, ¶ 1(C) [Dkt. No. 203].**

**Numerosity under Rule 23(a)(1)**

Numerosity is satisfied if joinder is impracticable. The Second Circuit has observed that 'numerosity is presumed at a level of 40 members.' *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), cert. denied, 515 U.S. 1122, 115 S. Ct. 2277, 132 L. Ed. 2d 281 (1995) (citing 1 NEWBERG ON CLASS ACTIONS § 3.05 (2d ed.1985)).

The plaintiffs allege, and the defendants do not dispute, that as of May 2005 there were "4.8 million shares of common stock outstanding, owned by hundreds if not thousands of persons." [Dkt. No. 142, ¶ 59]. More to the point, the lead plaintiffs' expert found that while average daily volume in Host America stock in the month prior to the proposed class period was only 26, 714, the reported volume during the 10 day class period was 151 million shares with a daily average volume of 16,784,357 [Dkt. No. 195, Exh. 7]. She has opined of that trading volume that 1.3 million shares of common stock were damaged during the class period in addition to up to 1.2 million warrants that were publicly traded during this time. [Affidavit of Candace L. Preston, Dkt. No. 195, Exh. 7]. Given the large volume of securities that were outstanding prior to the proposed class period and the estimated number of damaged shares during the period, it is reasonable to

5

expect a large number of class members, making joinder impracticable in this case.

**Commonality under Rule 23(a)(2)**

"The commonality requirement has been applied permissively in securities fraud litigation. In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *In re Initial Pub. Offering Sec. Litig.*, at 85.

Commonality is satisfied when there are questions of law or fact common to the class. Fed. R. Civ. P. 23 (a)(2). Common to all proposed class members is their ownership of Host America securities during the class period. Also common are the questions of whether Host America made a material statement of fact which was false or misleading in violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 or violated § 20(a) of the Exchange Act, 15 U.S.C. §78t(a). The plaintiffs' expert implicitly utilized the "fraud on the market" theory to establish reliance and causation and to assess damages suffered by Host America securities holders. "The presumption [of reliance] is also supported by common sense and probability. Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available

information, and, hence, any material misrepresen-tations. It has been noted that it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. . . . Indeed, nearly every court that has considered the proposition has concluded that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." (Citations omitted; Internal quotation marks omitted) *Basic Inc. v. Levinson*, 485 U.S. 224, 246-247 (U.S. 1988). Additionally, the plaintiff's expert has opined that through mathematical models, established and generally recognized and employed by financial professionals, the damages suffered by the securities holders can be commonly proved. Ordinarily, there would be differing proof presented by the shareholders and warrant holders as to how efficient their respective markets were, but under the Stipulation, the defendants have implicitly accepted an assumption of complete market efficiency as and the resulting complete reliance of the securities holders.

**Typicality and Adequacy of Representation under Rules 23(a)(3) and 23 (a)(4)**

Typicality occurs when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23 (a)(3). "The rule is satisfied . . . if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of

the proposed class members. . . . The test for determining if a representative is subject to unique defenses is whether the defenses will become the focus of the litigation, overshadowing the primary claims and prejudicing other class members. Accordingly, the commonality and typicality requirements tend to merge because [b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." (Citations omitted; internal quotation marks omitted.) *In re Initial Pub. Offering Sec. Litig.*, at 85.

"Plaintiffs must also show that the representative parties will fairly and adequately protect the interests of the class. Representation is adequate if: (1) there is no conflict of interest between the plaintiffs and the other class members; and (2) plaintiffs' attorneys are qualified, experienced and capable. It is well established that "in complex litigations such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is to be expected." (Internal quotation marks omitted.) Id.

Judge Arterton, in appointing lead plaintiff and counsel for purposes of consolidation under the Private Securities Litigation Reform Act of 1995,15 U.S.C. § 77z-1, previously assessed the definitions of those terms

8

and found that the standards of adequacy and typicality requirements of Rule 23, for purposes of consolidation, were satisfied in this case. [Dkt. No. 81; dated April 10, 2006]. Judge Arterton made this determination in the face of a substantive challenge by other plaintiffs. Subsequently, Judge Arterton's determination has not been challenged and no facts have been asserted which would tend to undermine those findings. Accordingly, this court agrees with Judge Arterton's determinations.

<u>Rule 23(b)(3)</u>

Rule 23 (b)(3) requires that the common issues of law or fact predominate over individual's issues and that a class action is a superior method of adjudication. "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof. . . . The 23(b)(3) predominance requirement is 'more stringent' and 'far more demanding than' the commonality requirement of Rule 23(a). . . . Courts frequently have found that the requirement was not met where, notwithstanding the presence of common legal and factual issues that satisfy the commonality requirement, individualized inquiries predominate. Nonetheless, the Supreme Court has noted that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud" (Citations omitted.) Id. In short,

commonality means there are common questions of law or fact while preponderance means that the common questions are greater than the uncommon questions.

On July 11, 2005, Host America stock closed at $3.12 per share. On July 12, the day the company issued its admittedly false statement, the stock priced closed at $6.35 per share. When the SEC halted trading just 10 days later, the stock price had risen to $13.92. On August 31st, while trading in the stock was suspended, the company issued a retraction of its July 12th statement. On September 1, the first day that trading had resumed, the stock price closed at $ 3. 71 per share.

These issues of fact and the resulting questions of law stemming from these facts, are common to *all* of the proposed class members. Although these facts specifically deal with the stock prices, the defendants accept the plaintiffs' expert assumption that the warrants were also damaged as a result of the stock fluctuations and volatility. The plaintiffs expert attests that "[b]ased on a detailed event study and analysis, I determined that the price appreciation in Host America Corp. stock and warrants that occurred from July 12, 2005 through July 22, 2005 was *virtually entirely attributable* to the alleged misrepresentations and nondisclosures." (Emphasis added.) Whether the Exchange Act was violated, whether the defendants omitted and/or misrepresented material facts, whether the defendants knew that there statements were misleading, whether the traded securities' values

were inflated as a result of the misstatements or nondisclosures are all questions of law and fact that the class members have in common and can be established by common proof.

There are some uncommon issues of law and fact that would emerge if the case were fully litigated. Class members will have suffered different damages. The plaintiff's expert explains, however, that a mathematical formula can be used to assess each individual's damages, reducing the concern that individual assessments of damages would be so burdensome as to outweigh the common issues of law or fact. This assessment of damages assumes that the securities were traded in an efficient market, an issue of fact that may differ between shareholders and warrant holders. While ordinarily the parties would need to validate this assumption, especially since the warrants may not have been traded publicly, the defendants are not challenging it at the time of the opinion, nor are the other plaintiffs, which include warrant holders. Only one plaintiff challenges the assumed number of warrant holders and the recovery calculation which it contends is based on an erroneously low number of warrants.

Nothwithstanding some questions that may differ between individual members of the proposed class, the issues of law and fact common to the class predominate over questions of law or fact of individual class members.

11

**The class action device is a superior method of adjudication in this case. First, there are a large number of potential class members. Second, Host America's current financial condition and the resulting diminishing ability of the settling defendants to restitute harmed securities holders[2] necessitates prompt resolution. Third, the possibility of small recoveries, typically associated with securities fraud cases, means that recovery is more likely through a class action. Forth, given the common issues of fact and law, the dispute can be resolved more efficiently, timely and consistently through a class action than through the present consolidated format.**

**At this stage in the proceedings Rule 23(a) and (b)(3) appear to be satisfied. This is a conditional certification not because the requirements of Rule 23 have not been met, which they have, but because the facts may evolve at the settlement fairness hearing. As previously mentioned, "[t]he important point is that the requirements of Rule 23 must be met, not just supported by some evidence."** *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)* **at 33.**

---

[2] **By way of Documents filed with the court on 9/21/07 [Dkt. No. 194], the settling defendants "plead with the Court to act on the parties' request for entry of the Order for Notice as soon as practicable. Host America remains in precarious financial condition, a significant factor underlying both the timing and substance of the parties' settlement. Settling Defendants respectfully suggest that Host America is in genuine need of progress and/or clarity on the proposed settlement. Without it, Host America may not survive, and the question of any settlement may be made moot."**

**IT IS SO ORDERED.**

**_____/S/_____**
**Vanessa L. Bryant**
**United States District Court Judge**