UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | : | |
| HOST AMERICA CORPORATION | : | |
| SECURITIES LITIGATION | : | MASTER FILE NO. |
| | : | 3:05-cv-01250 (VLB) |
| | : | |
| | : | March 7, 2008 |

**MEMORANDUM OF DECISION RE: ORDERS APPROVING
CLASS AND DERIVATIVE ACTION SETTLEMENTS
AND AWARDING ATTORNEY'S FEES [Docs. #240, 241]**

This litigation consists of a consolidation of a class action and a derivative action arising from the same occurrence, namely, the issuance of a press release by Host America Corporation ("Host America") announcing an agreement to install lighting fixtures in Wal-Mart stores. On July 11, 2005, the day before Host America issued the press release, the company's stock closed at $3.12 per share. By July 21, 2005, the stock had risen to $13.92 per share. The Securities and Exchange Commission suspended trading of the stock, and Host America subsequently acknowledged that its activities with Wal-Mart were limited to a small-scale test installation. When trading in Host America stock resumed on September 1, 2005, the shares closed at $3.71.

The class action was filed by persons and entities who alleged that Host America's press release was false and misleading and caused the price of the company's stock to rise between July 12 and 22, 2005. The derivative action was filed by Host America shareholders who alleged that the company's officers and

directors breached their fiduciary duty to the company by allowing the press release to be issued.  The parties reached settlements in both actions, and the Court certified the class action for settlement purposes only and conditionally approved the derivative action settlement.  [Docs. #207, 209]  The Court held a hearing on the fairness of the settlements on January 28, 2008.  Having determined that the settlements are fair, the Court issued orders approving them on February 5, 2008.  [Docs. #240, 241]  The Court now sets forth its findings of fact and conclusions of law in connection with those orders.

"A district court reviewing a settlement must consider the following nine factors, enumerated initially in [City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)]:  (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]"  D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001).

The Court first examines the class action settlement, which provides for the pro rata distribution of $2.45 million among the class members, who incurred approximately $9 million in damages.  The settlement represents a recovery of

about 27 percent, which is an average of $1.88 per share and $0.81 per warrant. None of the approximately 8,400 members of the class has objected to the settlement. "[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. . . . [T]he lack of objections may well evidence the fairness of the [s]ettlement." In re American Bank Note Holographics, Inc., Securities Litigation, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001). The Court therefore concludes that the second Grinnell factor is of greatest importance in approving the class action settlement.

The remaining Grinnell factors also weigh in favor of approving the settlement. This litigation is approximately two and one-half years old already and the parties have expended a great deal of time and resources investigating the matter. If the plaintiffs had not decided to settle at this time, they would face numerous risks in pressing ahead to trial, including the risk that Host America could not withstand a larger judgment. The company's current liabilities are approximately double its assets, and the company is able to contribute only about 30 percent of the $2.45 million settlement fund, with the balance being provided by insurance proceeds. In light of the risks of continued litigation and the best possible recovery, the Court finds that the settlement is within the range of reasonableness.

The Court next examines the derivative action settlement, which provides for the implementation of eleven corporate governance changes. The parties sent 1,870 notices of the settlement to Host America shareholders and received

only one objection, from Bart Hester.  Hester believes that certain additional corporate governance changes are needed, but he has failed to offer expert testimony regarding his corporate governance plan.  In the absence of expert testimony, the Court finds that there is insufficient evidence that Hester's plan is superior to the plan outlined in the settlement.

Hester also believes that Host America shareholders should try to recover money damages from the company's directors.  In response, the settling parties contend that the maximum recovery would be approximately $285,000 and that the time and expense that would be involved in attempting to recover that sum do not justify the continuation of this action.  The Court finds that the settling parties' representation of the maximum recovery is credible and that the possibility of that monetary recovery is an insufficient basis upon which to reject the settlement.  Hester's objections are therefore overruled.  The lack of any other objections strongly suggests that the settlement is fair.  Consistent with the Court's ruling on Hester's objections, the Court finds that the remaining Grinnell factors also weigh in favor of approving the settlement.  The settlement is within the range of reasonableness because the risks of continued litigation outweigh the possible recovery of relatively little in money damages from Host America's directors.

Finally, the Court turns to the issue of attorney's fees.  "[W]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . .  [D]istrict courts should continue to be guided by the traditional criteria

in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." <u>Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC</u>, 504 F.3d 229, 248-49 (2d Cir. 2007).

In the class action, the plaintiff's attorneys have requested a fee award of 20 percent of the gross settlement fund. That figure equals approximately 88 percent of the attorneys' lodestar, which is the number of hours spent on the case multiplied by the attorneys' hourly rates. The Court finds that the 20 percent fee award request is reasonable, particularly because it equals less than the lodestar. In the derivative action, the plaintiffs' attorneys have requested a fee and expense award of $140,000, to be paid by Host America's insurer. That figure equals approximately 56 percent of the sum of the attorneys' lodestar and expenses. The Court finds that the request is reasonable, particularly because it equals only slightly more than half of the sum of the lodestar and expenses.

The settlements and requests for attorney's fees are APPROVED.

                                                **IT IS SO ORDERED.**

                                                  /s/
                                          **Vanessa L. Bryant**
                                          **United States District Judge**

**Dated at Hartford, Connecticut: March 7, 2008.**